IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00347-PAB-CBS

JERRY GRADY,

      Plaintiff,

v.

TANIA GARCIA, Director of C.D.O.C. T.C. Program,
DAVE BOOTH, Director of Sterling Corr. Fac. T.C. Program, and
WESLEY WILSON, Case manager 3 Sterling Corr. Facility,

      Defendants.

_____

### ORDER
_____

This matter is before the Court on the Motions for Summary Judgment [Docket

Nos. 70, 71, 72] filed by defendants Tania Garcia, Dave Booth, and Wesley Wilson.

The motions are fully briefed and ripe for resolution.

## I.  BACKGROUND[1]

Plaintiff Jerry Grady is a state prisoner incarcerated at Sterling Correctional

Facility ("SCF") in Sterling, Colorado.  Mr. Grady initiated this lawsuit *pro se* on February

10, 2010 [Docket No. 1].  At the Court's direction [Docket No. 14], on August 9, 2010,

Mr. Grady filed a Second Amended Complaint [Docket No. 17] pursuant to 42 U.S.C.

§ 1983 and 28 U.S.C. § 1343.

Mr. Grady's second amended complaint named seven defendants: Aristedes

Zavaras, Dana Bustos, Tania Garcia, Kevin Millyard, Dave Booth, Carl Soares, and

Wesley Wilson.  Docket No. 17 at 1.  Upon initial review, Magistrate Judge Boland

_____

[1]Unless otherwise indicated, the following facts are not in dispute.

dismissed defendants Aristedes Zavaras, Dana Bustos, Kevin Millyard, and Carl

Soares.  Docket No. 18.  The remaining defendants filed the present motions for

summary judgment.

Mr. Grady's claims arise out of his participation in the Therapeutic Community

("TC") program, a substance abuse program at SCF.  On December 18, 2008, Mr.

Grady signed an agreement to enter the TC program, Docket No. 70-1 at 5, and was

admitted into the TC Unit on December 18, 2009.  *Id.* at 2, ¶ 6.  During his time in the

TC Program, Mr. Grady did not file any complaints with regard to his physical limitations

or work assignments, but he did inform the staff that he was beginning hepatitis C

treatment.  *Id.* at ¶ 8.

On February 2, 2010, Mr. Grady "informed [Colorado Department of Corrections

("CDOC")] staff that he was quitting the program after he was addressed for breaking a

minor program rule."  *Id.* at 2-3, ¶ 9.  Mr. Grady told Mr. Booth, the supervisor of the TC

program, that he was "too emotionally unstable" and claimed that he would "hurt

someone" if he was not allowed to leave the TC program.  *Id.*  Mr. Grady also

expressed anger at the TC Program staff.  Docket No. 72-3 at 51.  Mr. Grady was

referred to the mental health clinic the same day and was evaluated by a psychologist.

*Id.*

On February 3, 2010, because Mr. Grady voluntarily left the TC Program,

Docket No. 70-1 at 6, he underwent "a restricted privileges status review" pursuant to

CDOC policy.[2]  Docket No. 70-2 at 1, ¶¶ 5-6.  During the status review, Mr. Grady

_____

[2]A Restricted Privileges ("RP") status review is initiated for any inmate who
refuses to participate in, or is terminated from, a DOC treatment program to which the

refused to return to the TC program, *id.* at 2, ¶¶ 7-8, and therefore was referred for placement in RP status.  *See id.* at 13.

On February 22, 2010, Mr. Grady filed a Restricted Privileges Status Appeal Form.  *Id*. at 2, ¶ 11.  The decision to place Mr. Grady on RP status was upheld, *see id.* at 14, and on May 19, 2010, after a total of three months in the RP Unit, Mr. Grady was removed from RP status.  *Id*. at 3, ¶ 16.

Based on his placement in the RP Unit, Mr. Grady filed the current action asserting an Eighth Amendment claim for cruel and unusual punishment and a Fourteenth Amendment due process claim.  *See* Docket No. 17 at 5.  Mr. Grady argues that, because he suffers from degenerative bone disease, rheumatoid arthritis, osteoporosis, and hepatitis C, defendants knew or should have known that his participation in the TC program would lead to the deterioration of his serious medical conditions.  *Id.* at 6.  Mr. Grady also asserts that defendants' refusal to waive his participation from the TC program violated his Fourteenth Amendment due process right to be free from atypical and significant hardships.  *Id.* at 12.  Specifically, Mr. Grady alleges that, because of his participation in the TC program, he was subject to significant hardships such as sleep deprivation, intimidation, fear, and degradation.  *Id.* at 7.

For relief, Mr. Grady seeks compensatory damages, punitive damages, the expungement of his record in the TC program, and the expungement of any disciplinary actions concerning the TC program, as well as the restoration of "all liberties and

---

offender is assigned.  Docket No. 70-2 at 1-2, ¶ 6.

freedoms that were taken in the course of the constitutional violations." Docket No. 17 at 20.

Defendants' motions for summary judgment assert that: (1) Mr. Grady's claims against defendants in their official capacities are barred by the Eleventh Amendment; (2) defendants are entitled to qualified immunity on all of Mr. Grady's claims; and (3) Mr. Grady's claims are barred because he failed to exhaust administrative remedies prior to filing the lawsuit.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Rule 56 of the Federal Rules of Civil Procedure when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & Cnty. of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the Univ. of N. M.*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a

4

court must view the evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate.  *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As Mr. Grady provided a verified complaint, *see* Docket. No. 17 at 20, the Court may consider the document as an affidavit.  *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997).  Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value."  *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).").  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the

pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

Defendants move for summary judgment and submit evidence pertaining to Mr. Grady's claims. As defendants' motions are properly supported, the burden shifts to Mr. Grady to show, by tendering competent evidence, that summary judgment is not proper. The Court must determine whether Mr. Grady has met his burden of presenting specific facts to overcome defendants' motions.

## III. ANALYSIS

### A. Sovereign Immunity

In his second amended complaint, Mr. Grady asserts claims against defendants in both their individual and official capacities. *See, e.g.,* Docket No. 17 at 8, ¶ 5 ("Dave Booth, [i]n his Official and Individual Capacity"); *see id.* at 11, ¶ 2 ("Tania Garcia in her Official capacity"); *id.* at 13, ¶ 5 ("Wesley Wilson . . . in his Official and individual capacity."). However, in his response, Mr. Grady states "[t]he defendants were not named in their official capacities"; rather, they were sued "individually." Docket No. 101 at 9. The Court construes Mr. Grady's complaint as seeking punitive and compensatory damages against Ms. Garcia in her official capacity only[3] and against Mr. Booth and Mr. Wilson in both their individual and official capacities.

With regard to Mr. Grady's claims against defendants in their official capacities, the Court finds that these claims are barred by the Eleventh Amendment. The Eleventh

---

[3]In both instances where Mr. Grady's complaint asserts allegations against Ms. Garcia, he specifically states that his claims are based on her responsibilities as a state official. *See, e.g.,* Docket No. 17 at 7, ¶ 3 ("In Official Capacity"); *see id.* at 11, ¶ 2 ("in her Official capacity as the C.D.O.C. T.C.").

Amendment bars actions for damages against a state in federal court unless the state waives its sovereign immunity.  *See* U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity under which a state officer may be enjoined from "taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainaint."  *Id.* at 159.  The *Ex parte Young* exception, however, is narrow and applies only to prospective relief and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

Here, Mr. Grady brings claims against defendants pursuant to 42 U.S.C. § 1983. Docket No. 17 at 4.  He seeks compensatory damages, punitive damages, and restoration of "all liberties and freedoms taken in the course of the Constitutional violations."  *Id.* at 20.  The Court construes Mr. Grady's latter claim as a request for a declaratory judgment that defendants violated his constitutional rights in the past.

A suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office and therefore is no different from a suit against the state.  *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Given that § 1983 did not abrogate the Eleventh Amendment, or provide a jurisdictional basis for suit against a state official acting in his or her official capacity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), Mr. Grady may only proceed with his official capacity claims if he seeks prospective relief.  Because Mr. Grady does not seek prospective relief, and instead requests monetary damages and a declaratory ruling,

7

the Court finds that these claims are barred by the Eleventh Amendment.  Accordingly,

the Court dismisses Mr. Grady's claims for monetary and declaratory relief against all

defendants in their official capacities.

## B.  Eighth Amendment Claim

Mr. Grady brings claims against Mr. Booth[4] in his individual capacity for failing to

maintain humane conditions of confinement in violation of the Eighth Amendment.  *See*

Docket No. 17 at 12-20.

Mr. Grady's Eighth Amendment claim alleges that Mr. Booth was deliberately

indifferent to a serious risk to his health and safety.  Mr. Grady states that, despite

being informed of Mr. Grady's deteriorating health, Mr. Booth "declined to discuss the

issue with the plaintiff" leading Mr. Grady to suffer from "severe complications with his

serious medical issues."  Docket No. 17 at 12, ¶ 3.  In his response, Mr. Grady also

states that defendants misconstrue his § 1983 claim as "this [is] not an issue of a

'medical care claim' that would have to rise to the deliberate indifference, culpable state

of mind . . . [i]t is a Due Process 14th Amendment claim with 8th Amendment

implications."  Docket No. 101 at 6.  Mr. Grady further claims that Mr. Booth's violations

of his 14th Amendment rights placed Mr. Grady in an "atypical situation and an undue

hardship that is not a common, ordinary day of prison life."  *Id*.  Mr. Grady's claims

against Mr. Booth center around Mr. Booth's refusal to provide Mr. Grady with a waiver

---

[4]In the complaint, Mr. Wilson is listed only under Claim Two, which refers to the 14th Amendment Due Process claim.  Docket No. 17 at 13, ¶ 5.  Additionally, Mr. Grady's response does not refer to Mr. Wilson with regard to his Eighth Amendment claim.  *See* Docket No. 101.  Accordingly, the Court construes claims against Mr. Wilson with regard to the Fourteenth Amendment only.

from the TC program due to Mr. Grady's physical and mental health issues.  *Id*. at 7;

*see also id*. at 25 ("The defendants claim that there is a waiver process but never waive

anyone for their program.  I conclude that there IS no waiver process.").

The Eighth Amendment to the United States Constitution prohibits the infliction

of cruel and unusual punishment.  Certain conditions of confinement, if they inflict pain

unnecessarily and wantonly, may constitute cruel and unusual punishment under the

Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To establish an

Eighth Amendment claim premised upon deliberate indifference to inhumane conditions

of confinement, Mr. Grady must show (1) he is incarcerated in conditions posing a

substantial risk of serious harm to his health and safety and (2) that Mr. Booth imposed

or continued these conditions with a sufficiently culpable state of mind.  *Farmer v.

Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  The test for "deliberate

indifference" claims has both an objective and subjective component.  *Sealock v.

Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The objective component of the test is met if the harm suffered is sufficiently

serious or is an extreme deprivation.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  For

an alleged harm to be sufficiently serious "a prison official's act or omission must result

in the denial of 'the minimal civilized measure of life's necessities.'"  *Farmer*, 511 U.S. at

834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  The subjective

component is met if a prison official knows of and disregards excessive risks to an

inmate's health and safety.  *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

Under this standard, "the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Accordingly, Mr. Grady must demonstrate that the risk he faced was sufficiently serious and that Mr. Booth was aware of this risk and disregarded it. *Id*.

In his amended complaint, Mr. Grady alleges that he informed Mr. Booth that the TC program caused him stress and fear because he believed that Mr. Booth had the "right to release" him from the TC program for medical reasons. Docket No. 17 at 12, ¶ 3. Mr. Grady asserts that he informed Mr. Booth that inmates had "authority over other inmates, resulting in" direct abuse. *Id*. at 8, ¶ 5. Mr. Grady claims that this environment led to daily "stress, fear, and retaliation." *Id.* at 12, ¶ 3.

Based on this evidence, Mr. Grady fails to meet the objective component of this inquiry. Vague allegations of fear, pressure, and stress are insufficient to establish sufficiently dangerous conditions of confinement. *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (conclusory allegations unsupported by factual averments are insufficient to state a claim); *Barksdale v. Connaghan*, No. 10-cv-02491-CMA-CBS, 2011 WL 3664382, at *9 (D. Colo. July 28, 2011) (allegations of mental and physical stress are insufficient to meet the objective prong of an Eighth Amendment claim). There is no evidence that Mr. Grady was abused by other inmates or any evidence to support his allegation that inmates were allowed to abuse other inmates. *See* Docket No. 71-3 at 10, ¶ 33. Other than generalized conclusory allegations of "degr[a]dation, humiliation, fear. . . sleep deprivation" and "intim[i]dation" by other inmates and his physical and emotional inability to complete the TC Program, *see* Docket No. 17 at 8,

Mr. Grady has not sufficiently demonstrated specific dates, circumstances, or conduct by Mr. Booth.  Mr. Grady's asserted risks are not sufficiently serious to establish an Eighth Amendment claim, as they are not extreme risks resulting in the denial of the minimal civilized measure of life's necessities.  *See Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1337-38 (10th Cir. 2007) (conditions of confinement in most restrictive housing pod "met the basic necessities of life"); *Trujillo v. Williams*, 465 F.3d 1210, 1225 n. 17 (10th Cir. 2006) (allegations of "limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary" did not demonstrate an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). Given that Mr. Grady fails to meet the objective prong of this inquiry, the Court need not address the subjective prong.  *See Dexter v. Ford Motor Co.*, 92 F. App'x 637, 640 (10th Cir. 2004) (the court need not examine whether plaintiff has met subjective requirement because he "has failed to meet the objective requirement").

### C.   Fourteenth Amendment Claim

Mr. Grady asserts a claim against Mr. Booth, Ms. Garcia, and Mr. Wilson in their individual capacities for a violation of his Fourteenth Amendment right to due process. Specifically*,* Mr. Grady alleges that defendants acted in an arbitrary and unfair manner by using a classification hearing as a disciplinary action after Mr. Grady's refusal to participate in the TC Program.  Docket No. 17 at 11.

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'"  *Estate of DiMarco*, 473 F.3d at

1339 (quoting U.S. Const. Amend. XIV).  "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  "In determining whether an individual has been deprived of his [Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."  *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).  "The burden of proof as to both prongs is squarely on" Mr. Grady.  *McClary v. Kelly*, 4 F. Supp. 2d 195, 202 (W.D.N.Y. 1998); *see also Dantzler v. Beard*, 2007 WL 5018184, at * 2 n. 1, 6 (W.D. Pa. Dec. 6, 2007) (plaintiff has burden of establishing protected interest exists).

"The first issue in the due-process context is whether the plaintiff has established a protected interest (in this case a liberty interest)."  *Toevs v. Reid*, 646 F.3d 752, 756 (10th Cir. 2011) (citations omitted).  While the Fourteenth Amendment due process guarantee applies to prison inmates, "their due process rights are defined more narrowly."  *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).  "The Due Process Clause itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."  *Toevs*, 646 F.3d at 756 (internal quotation marks and citation omitted).  In the prison context, the Supreme Court has established that protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection

by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wilson*, 430 F.3d at 1117 ("a prisoner is entitled to due process before he is subjected to conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or disciplinary actions that inevitably affect the duration of his sentence.") (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has applied several factors in analyzing whether conditions of confinement impose such an atypical and significant hardship that a liberty interest exists. These factors include whether "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation . . . ; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate." *Estate of DiMarco*, 473 F.3d at 1342.  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

Mr. Grady alleges that he was "denied due process under the Fourteenth Amendment of the Constitution" when defendants acted "in an arbitrary and unfair manner [that] imposed atypical and significant hardship on the Plaintiff . . . relating to rehabilitative programs and therapy." *See* Docket No. 17 at 10.  He alleges that

defendants used "a classification hearing as a disciplinary action in order to circumvent due process." *See, e.g.,* Docket No. 101 at 24 (arguing that officials at SCF use a classification hearing as a disciplinary action in order to circumvent Due Process); *see also id*. at 25 (TC was "designed to divert Due Process . . . and bury Cruel and Unusual practices inside a seemingly lawful program"); *id.* at 19 (defendants have "created a HYBRID PROCEDURE that is a cross between a Classification [hearing] and a Disciplinary [hearing].").

Mr. Grady's claim does not rest on his voluntary participation in the TC program; rather, he argues that he is deprived of a liberty interest because once he leaves the TC program, he is automatically re-classified to RP status and found as non-compliant. Docket No. 101 at 26.  Mr. Grady argues that this automatic re-classification is punishment because it transfers him into more adverse conditions of confinement which are akin to administrative segregation.  *Id*. at 23.  He further claims that this re-classification is tantamount to a deprivation of a liberty interest because once he is in RP status he loses earned time, is labeled as a non-compliant inmate, and is subject to reduced eligibility for Parole/Community Placement.  *See id*. at 5; *see also id.* at 27 ("2 years of Parole/Community eligibility disqualification and 4 days Good Time loss every month for 2 years (3 mo. 6 days), and more.").[5]  Mr. Grady asserts an automatic re-classification deprives him of due process because he is not entitled to a hearing prior to the classification and has no recourse from the re-classification.  *Id*.  He claims that his only avenue for appeal is to file a case with the Court.  *Id*.  Mr. Grady further

_____

[5]Plaintiff's Answer to Interrogatory No. 6, Docket No. 70-4 at 6, makes specific allegations with regard to all three defendants.

contends that automatic re-classification in RP status, without a hearing, makes voluntary participation in the TC program illusory.  Docket No. 101 at 23 ("If I volunteered to take the program how is it that I was punished for not continuing it?").

In order to prevail on his due process claim, Mr. Grady must demonstrate that he has a protected liberty interest in avoiding placement in the RP Unit and that defendants afforded him inadequate process when determining his placement.  In other words, Mr. Grady must show that his conditions of confinement in the RP unit create an "atypical and significant hardship" when compared to ordinary incidents of prison life. *Sandin*, 515 U.S. at 485-87; *see also Toevs*, 646 F.3d at 756 (avoiding transfer to more adverse conditions of confinement, by itself, does not give rise to a liberty interest).

First, the Court notes that Mr. Grady does not have a federally cognizable liberty interest in participating in the TC rehabilitation program.  "Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment."  *Washington v. Borejon*, 324 F. App'x 741 (10th Cir. 2009) ("The ability to participate in a rehabilitative prison program clearly does not implicate life or property interests."); *Kirkland v. McKee*, 2009 WL 1542899, at * 5 (W.D. Mich. June 2, 2009) ("[f]ederal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment.") (collecting cases); *see also Jimenez v. Reeder*, 2009 WL 700776, at * 3 (N.D. Fla. Mar. 16, 2009) ("[p]laintiff's complaint does not establish a constitutional interest, pursuant to the Due Process Clause or otherwise, in a drug rehabilitation program.").

15

Mr. Grady alleges that a loss of privileges is punishment and gives rise to a liberty interest.  *See* Docket No. 17 at 5, ¶ 4.  He argues that, because a liberty interest is implicated in automatic re-classification, he must have a hearing and that the reclassification cannot be automatic.  *Id*.  Some of the privileges Mr. Grady lost as a result of his voluntary withdrawal from the TC program include having in his cell a television and radio, typewriters, fans, coffee pots, and certain canteen items.  *See* Docket No. 70-2 at 7, ¶ IV. E.  The Court finds that a loss of these privileges does not create a liberty interest, as they do not create an "atypical and significant hardship on [Mr. Grady] in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *see Rocha v. Zavaras*, No. 10-cv-01272-PAB-KMT, 2011 WL 805758, at * 2 (D. Colo. Feb. 28, 2011) (plaintiff's placement in the RP Unit without a hearing did not support a procedural due process claim for deprivation of a liberty interest where complaint lacked any allegations that RP status imposed atypical and significant hardship in relation to the ordinary incidents of prison life).  Mr. Grady provides no specific evidence concerning the conditions of his confinement in the RP Unit or how his situation was atypical.  Mr. Grady's allegations and arguments regarding his RP status are conclusory and, thus, are insufficient to support his claims.  Mr. Grady's generalized conclusory allegations of "degr[a]dation, humiliation, fear. . . sleep deprivation" and "intim[i]dation" by other inmates, and of his physical and emotional inability to complete the TC Program, *see* Docket No. 17 at 8 of 20; Docket No. 101 at 11, 22-23, do not demonstrate that the limits on privileges for inmates on RP status differ in such degree or duration "as compared with the ordinary incidents of prison life to constitute protected

liberty interests under the Due Process Clause." *Rocha*, 2011 WL 805758, at * 2; *see Wallin v. Achen*, No. 10-cv-01317-BNB, 2011 WL 31107 (D. Colo. Jan. 5, 2011) ("placement in RP for ninety days does not subject [plaintiff] to an atypical and significant hardship in relation to the ordinary incidents of prison life."); *Doyle v. Cella*, No. 07-cv-01126-WDM-KMT, 2008 WL 4490111, at * 4 (D. Colo. Sept. 30, 2008) (plaintiff's placement on RP status for fourteen and a half months did not demonstrate a liberty interest).

Additionally, the statute authorizing the DOC to deprive inmates of certain privileges, Colo. Rev. Stat. § 17-20-114.5, does not demonstrate an intent by the General Assembly to create a property or liberty interest in inmate privileges. *See id.* ("[a]ny person convicted of a crime and confined in any state correctional facility . . . is not entitled to any privileges that may be made available by the department.").

Moreover, the Court notes that Mr. Grady's asserted liberty interest in avoiding the RP Unit does not satisfy any of the *DiMarco* factors. First, the deprivation of privileges serves a penological interest in encouraging inmate participation in DOC work programs. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (administrative segregation due to legitimate concerns about prison security did not impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life). Second, as noted above, apart from the deprivation of privileges, there is no indication that conditions in the RP Unit are extreme. *See Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 651-52 (10th Cir. 2006) (finding no liberty interest in five-year confinement under administrative segregation).

Furthermore, Mr. Grady has not demonstrated that his placement in the RP Unit impacted the length of his confinement.  Mr. Grady asserts that his RP status affected his parole and community placement eligibility and caused him to lose good time and/or earned time credits.  However, Colorado law does not furnish a right to earned good-time credits and expressly permits the denial of such a right.  *See* Colo. Rev. Stat. § 17-22.5-301(4) ("[n]othing in this section shall be so construed as to prevent the department from withholding good time earnable in subsequent periods of sentence, but not yet earned, for conduct occurring in a given period of sentence."); *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (applying Colo. Rev. Stat. § 17-22.5-302(1)); *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) ("Because under Colorado law, good time credits are discretionary, [plaintiff] does not have a protected interest in earning good time credits) (internal quotation marks and citation omitted).

Regarding parole and community placement eligibility, the Constitution does not create a protected liberty interest in a prisoner's release prior to the expiration of a valid sentence.  *See Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 7  (1979).  Mr. Grady does not specifically identify any state law giving him a liberty interest in parole or community placement.  Colorado law does not put substantive limitations on the Parole Board's discretion, and thus does not create a liberty interest in release on parole.  *See* Colo. Rev. Stat. § 17-22.5-404.  Mr. Grady does not have a protected liberty interest in being classified as a community corrections participant under either the Constitution or Colorado law.  In Colorado, the Community Corrections

18

Board has the authority to accept or reject any offender referred for placement in a community corrections program.  *See* Colo. Rev. Stat. § 17-27-103(5).  "As the Supreme Court explained in *Sandin*, [t]he decision to release a prisoner rests on a myriad of considerations."  *Marshall v. Morton*, 421 F. App'x 832, 838 (10th Cir. 2011) (internal quotation marks and citation omitted).  Mr. Grady has not demonstrated that his RP status is considered when deciding whether to grant parole or community placement.  The chance that such consideration "will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  *Id.* (internal quotation marks and citation omitted).

As to the fourth *DiMarco* factor, Mr. Grady cannot establish that his temporary placement in the RP Unit was indeterminate.  His RP status lasted for a definite term of approximately 105 days.  Mr. Grady does not provide evidence that the duration of his RP status imposed an "atypical and significant hardship" to implicate a liberty interest. *See Sandin*, 515 U.S. at 484.

To the extent that Mr. Grady argues that his RP status was really administrative segregation, prisoners do not have a constitutionally recognized liberty interest in a particular security classification.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");[6] *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it

---

[6]Unrelated portions of the holding in *Hewitt* have been superseded by later case law.  *See Sandin*, 515 U.S. at 472.

is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all."). The mere placement in administrative segregation does not, on its own, implicate a liberty interest. *See Penrod*, 94 F.3d at 1406 (administrative segregation regime plaintiff was subjected to did not impose an atypical and significant hardship in relation to the ordinary incidents of prison and, thus, plaintiff's due process claim lacked merit because prison regulations did not create a liberty interest); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (placement in administrative segregation did not give rise to a liberty interest). Administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration. *Hewitt*, 459 U.S. at 468. A prisoner's due process rights will not generally be implicated by disciplinary actions that do not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Here, the alleged administrative segregation was approximately 105 days of RP status. This denial is not sufficiently severe to create a protected liberty interest. *See Villarreal v. Harrison*, No. 99-1268, 1999 WL 1063830, at *2 & n. 1 (10th Cir. Nov. 23, 1999) (concluding that conditions of prisoner's two-year confinement in administrative detention, including restricted telephone privileges and requirement that he eat all of his meals alone in his cell, were not so different as compared with normal incidents of prison life as to give rise to a protected liberty interest); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (holding that ninety-day confinement without store privileges, radio, and phone calls did not differ in

significant degree and duration from ordinary incidents of prison life to create a protected liberty interest); *see also DiMarco*, 473 F.3d at 1343 (deprivations resulting from confinement in administrative segregation did not impose such an atypical and significant hardship as to meet the *Sandin* standard).

In sum, Mr. Grady's placement on RP status based on his removal from the TC program is insufficient as a matter of law to establish atypical conditions of confinement under *Sandin*.  Accordingly, summary judgment is properly granted on his claim for violations of his Fourteenth Amendment due process rights.

### D.  Qualified Immunity

Generally, government officials sued under § 1983 in their individual capacities have qualified immunity when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  In order to survive a motion for summary judgment, Mr. Grady must provide evidence raising genuine issues of material fact to show that the official deprived him of a constitutional right and that the constitutional right was clearly established at the time of the conduct.  *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011).  Since the Court concludes that Mr. Grady fails to demonstrate any constitutional violation, defendants are entitled to qualified immunity on all of plaintiff's claims.  The Court need not reach the "clearly established" prong of qualified immunity to conclude that summary judgment is correctly granted in favor of defendants.  *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (instructing district court on remand to enter judgment in favor of defendant on basis of qualified

immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

### E.   Violation of Prison Policies, Practices, Regulations, and Rules

Mr. Grady argues that defendants violated CDOC policies and practices, SCF Administrative Regulations, and TC Program rules.  *See, e.g.,* Docket No. 101 at 9 (defendants "did not perform, provide or institute said procedures mandated by their own AR's"); *see id.* at 10 (defendants "are in violation of their own guidelines when they do not STRICTLY adhere to AR's as written") (emphasis in original).  The "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citation omitted); see *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision").  Mr. Grady cannot prevail on his § 1983 claim even if he could prove a violation of a prison administrative regulation, rule, policy, or procedure.  *See Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim under § 1983.") (citations omitted).

### F.   Exhaustion of Administrative Remedies and Personal Participation

Based on the analysis above, the Court need not reach defendants' arguments that Mr. Grady failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

IV.     **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Defendant Tania Garcia's Motion for Summary Judgment

[Docket No. 70] is **GRANTED**.  It is further

**ORDERED** that Defendant Dave Booth's Motion for Summary Judgment [Docket

No. 71] is **GRANTED**.  It is further

**ORDERED** that Defendant Wesley Wilson's Motion for Summary Judgment

[Docket No. 72] is **GRANTED**.  It is further

**ORDERED** that summary judgment shall enter in favor of all defendants and

against plaintiff on all claims in the Second and Final [Amended] Prisoner Complaint

[Docket No. 17].  It is further

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Order In the

Scheduling Conference [Docket No. 39] is **DENIED** as moot.

DATED March 27, 2012.

BY THE COURT:

_s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge